MICHAEL FAILLACE & ASSOCIATES, P.C.
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
JOSE LUIS PASTOR and MOISES AGUILA
RAMIREZ, *individually and on behalf of others similarly situated,*

       *Plaintiffs*,

  -against-

BATTERY PARK CLEANERS INC. (D/B/A
BATTERY PARK CLEANERS) and DONG
S. SONG,

       *Defendants.*
-------------------------------------------------------X

**COMPLAINT**

**COLLECTIVE ACTION UNDER 29 U.S.C. § 216(b)**

**ECF Case**



Plaintiffs Jose Luis Pastor and Moises Aguila Ramirez ("Plaintiffs"), individually and on behalf of others similarly situated, by and through their attorneys, Michael Faillace & Associates, P.C., upon their knowledge and belief, and as against Battery Park Cleaners Inc. (d/b/a Battery Park Cleaners), ("Defendant Corporation") and Dong S. Song, ("Individual Defendant"), (collectively, "Defendants"), alleges as follows:

### NATURE OF ACTION

1. Plaintiffs are former employees of Defendants Battery Park Cleaners Inc. (d/b/a Battery Park Cleaners) and Dong S. Song.

2. Defendants own, operate, or control a dry cleaner, located at 2 South End Avenue, New York, NY 10280 under the name "Battery Park Cleaners".

- 2 -

3. Upon information and belief, individual Defendant Dong S. Song, serve or served as owner, manager, principal, or agent of Defendant Corporation and, through this corporate entity, operates or operated the dry cleaner as a joint or unified enterprise.

4. Plaintiffs were employed as clothes ironers at the dry cleaner located at 2 South End Avenue, New York, NY 10280.

5. At all times relevant to this Complaint, Plaintiffs worked for Defendants in excess of 40 hours per week, without appropriate minimum wage and overtime compensation for the hours that they worked.

6. Rather, Defendants failed to maintain accurate recordkeeping of the hours worked and failed to pay Plaintiffs appropriately for any hours worked, either at the straight rate of pay or for any additional overtime premium.

7. Defendants' conduct extended beyond Plaintiffs to all other similarly situated employees.

8. At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs and other employees to work in excess of forty (40) hours per week without providing the minimum wage and overtime compensation required by federal and state law and regulations.

9. Plaintiffs now bring this action on behalf of themselves, and other similarly situated individuals, for unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 *et seq.* and 650 *et seq.* (the "NYLL"), including applicable liquidated damages, interest, attorneys' fees and costs.

10. Plaintiffs seek certification of this action as a collective action on behalf of themselves, individually, and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and the FLSA, and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a).

12. Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all, or a substantial portion of, the events or omissions giving rise to the claims occurred in this district, Defendants maintain their corporate headquarters and offices within this district, and Defendants operate a dry cleaner located in this district. Further, Plaintiffs were employed by Defendants in this district.

## PARTIES

*Plaintiffs*

13. Plaintiff Jose Luis Pastor ("Plaintiff Pastor" or "Mr. Pastor") is an adult individual residing in New York County, New York.

14. Plaintiff Pastor was employed by Defendants at Battery Park Cleaners from approximately April 1, 2019 until on or about January 4, 2021.

15. Plaintiff Moises Aguila Ramirez ("Plaintiff Aguila" or "Mr. Aguila") is an adult individual residing in Bronx County, New York.

16. Plaintiff Aguila was employed by Defendants at Battery Park Cleaners from approximately June 2018 until on or about October 19, 2020.

*Defendants*

17. At all relevant times, Defendants owned, operated, or controlled a dry cleaner, located at 2 South End Avenue, New York, NY 10280 under the name "Battery Park Cleaners".

18. Upon information and belief, Battery Park Cleaners Inc. (d/b/a Battery Park Cleaners) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 2 South End Avenue, New York, NY 10280.

19. Defendant Dong S. Song is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Dong S. Song is sued individually in his capacity as owner, officer and/or agent of Defendant Corporation. Defendant Dong S. Song possesses operational control over Defendant Corporation, an ownership interest in Defendant Corporation, and controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

## FACTUAL ALLEGATIONS

*Defendants Constitute Joint Employers*

20. Defendants operate a dry cleaner located in the Battery Park City section of Manhattan in New York City.

21. Individual Defendant, Dong S. Song, possesses operational control over Defendant Corporation, possesses ownership interests in Defendant Corporation, and controls significant functions of Defendant Corporation.

22. Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

23. Each Defendant possessed substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

24. Defendants jointly employed Plaintiffs (and all similarly situated employees) and are Plaintiffs' (and all similarly situated employees') employers within the meaning of 29 U.S.C. 201 *et seq*. and the NYLL.

25. In the alternative, Defendants constitute a single employer of Plaintiffs and/or similarly situated individuals.

26. Upon information and belief, Individual Defendant Dong S. Song operates Defendant Corporation as either an alter ego of himself and/or fails to operate Defendant Corporation as an entity legally separate and apart from himself, by among other things:

   a) failing to adhere to the corporate formalities necessary to operate Defendant Corporation as a Corporation,

   b) defectively forming or maintaining the corporate entity of Defendant Corporation, by, amongst other things, failing to hold annual meetings or maintaining appropriate corporate records,

   c) transferring assets and debts freely as between all Defendants,

   d) operating Defendant Corporation for his own benefit as the sole or majority shareholder,

   e) operating Defendant Corporation for his own benefit and maintaining control over this corporation as a closed Corporation,

   f) intermingling assets and debts of his own with Defendant Corporation,

g) diminishing and/or transferring assets of Defendant Corporation to avoid full liability as necessary to protect his own interests, and

h) Other actions evincing a failure to adhere to the corporate form.

27. At all relevant times, Defendants were Plaintiffs' employers within the meaning of the FLSA and New York Labor Law. Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for Plaintiffs' services.

28. In each year from 2018 to 2020, Defendants, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

29. In addition, upon information and belief, Defendants and/or their enterprise were directly engaged in interstate commerce. As an example, numerous items that were used in the dry cleaner on a daily basis are goods produced outside of the State of New York.

*Individual Plaintiffs*

30. Plaintiffs are former employees of Defendants who were employed as clothes ironers.

31. Plaintiffs seek to represent a class of similarly situated individuals under 29 U.S.C. 216(b).

*Plaintiff Jose Luis Pastor*

32. Plaintiff Pastor was employed by Defendants from approximately April 1, 2019 until on or about January 4, 2021.

33. Defendants employed Plaintiff Pastor as a clothes ironer.

34. Plaintiff Pastor regularly handled goods in interstate commerce, such as clothes' ironer and other supplies produced outside the State of New York.

35. Plaintiff Pastor's work duties required neither discretion nor independent judgment.

36. From approximately April 1, 2019 until on or about March 15, 2020, Plaintiff Pastor worked from approximately 8:00 a.m. until on or about 5:00 p.m., 5 days a week and from approximately 8:00 a.m. until on or about 4:00 p.m., one day a week (typically 50 hours per week).

37. From approximately March 15, 2020 until on or about January 4, 2021, Plaintiff Pastor worked from approximately 8:00 a.m. until on or about 4:00 p.m., 2 days a week (typically 16 hours per week).

38. Throughout his employment, Defendants paid Plaintiff Pastor his wages in a combination of check and cash.

39. From approximately April 1, 2019 until on or about March 15, 2020, Defendants paid Plaintiff Pastor a fixed salary of $650 per week.

40. From approximately March 15, 2020 until on or about January 4, 2021, Defendants paid Plaintiff Pastor $15.00 per hour.

41. Plaintiff Pastor's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

42. For example, Defendants required Plaintiff Pastor to work an additional 1 hour past his scheduled departure time once a month, and did not pay him for the additional time he worked.

From approximately April 2019 until on or about September 2019, Plaintiff Pastor was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

43. In addition, Plaintiff Pastor was required to sign a document in which Defendants misrepresented his hourly pay months before he was actually paid $15.00 per hour.

44. No notification, either in the form of posted notices or other means, was ever given to Plaintiff Pastor regarding overtime and wages under the FLSA and NYLL.

45. Defendants did not provide Plaintiff Pastor an accurate statement of wages, as required by NYLL 195(3).

46. Defendants did not give any notice to Plaintiff Pastor, in English and in Spanish (Plaintiff Pastor's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*Plaintiff Moises Aguila Ramirez*

47. Plaintiff Aguila was employed by Defendants from approximately June 2018 until on or about October 19, 2020.

48. Defendants employed Plaintiff Aguila as a clothes ironer.

49. Plaintiff Aguila regularly handled goods in interstate commerce, such as dry cleaner and other supplies produced outside the State of New York.

50. Plaintiff Aguila's work duties required neither discretion nor independent judgment.

51. From approximately June 2018 until on or about October 2018, Plaintiff Aguila worked from approximately 8:00 a.m. until on or about 5:00 p.m., 2 days a week, from approximately 8:00 a.m. until on or about 6:00 p.m. three days a week, Mondays through Fridays, and from approximately 8:00 a.m. until on or about 4:00 p.m., on Saturdays (typically 53 hours per week).

52. From approximately October 2018 until on or about May 2019 Plaintiff Aguila worked from approximately 8:00 a.m. until on or about 5:00 p.m., Mondays Through Fridays and from approximately 8:00 a.m. until on or about 4:00 p.m., on Saturdays (typically 50 hours per week).

53. From approximately June 2019 until on or about October 2019, Plaintiff Aguila worked from approximately 8:00 a.m. until on or about 5:00 p.m., 2 days a week, from approximately 8:00 a.m. until on or about 6:00 p.m. three days a week, Mondays through Fridays, and from approximately 8:00 a.m. until on or about 4:00 p.m., on Saturdays (typically 53 hours per week).

54. From approximately October 2019 until on or about March 15, 2020 Plaintiff Aguila worked from approximately 8:00 a.m. until on or about 5:00 p.m., Mondays Through Fridays and from approximately 8:00 a.m. until on or about 4:00 p.m., on Saturdays (typically 50 hours per week).

55. From approximately March 15, 2020 until on or about October 19, 2020, Plaintiff Aguila worked from approximately 8:00 a.m. until on or about 5:00 p.m., Mondays, Wednesdays and Fridays and from approximately 8:00 a.m. until on or about 12:00 p.m. or 2:00 p.m. Tuesdays or Thursdays (typically 31 to 33 hours per week).

56. From approximately June 2018 until on or about March 15, 2020, Defendants paid Plaintiff Aguila his wages in a combination of check and cash.

57. From approximately March 2020 until on or about October 2020, Defendants paid Plaintiff Aguila his wages by check.

58. From approximately June 2018 until on or about March 15, 2020, Defendants paid Plaintiff Aguila a fixed salary of $750 per week.

59. From approximately March 15, 2020 until on or about October 2020, Defendants paid Plaintiff Aguila $15.00 per hour.

60. Plaintiff Aguila's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

61. For example, from approximately June 2018 until on or about October 2018 and from approximately June 2019 until on or about October 2019, Defendants required Plaintiff Aguila to work an additional 1 hour past his scheduled departure time three times a week, and did not pay him for the additional time he worked.

From approximately June 2018 until on or about September 2019, Plaintiff Aguila was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

62. Defendants did not provide Plaintiff Aguila an accurate statement of wages, as required by NYLL 195(3).

63. Defendants did not give any notice to Plaintiff Aguila, in English and in Spanish (Plaintiff Aguila's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*Defendants' General Employment Practices*

64. At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs (and all similarly situated employees) to work in excess of 40 hours a week without paying them appropriate minimum wage and overtime compensation as required by federal and state laws.

65. Plaintiffs were victims of Defendants' common policy and practices which violate their rights under the FLSA and New York Labor Law by, *inter alia*, not paying them the wages they were owed for the hours they worked.

66. Defendants' pay practices resulted in Plaintiffs not receiving payment for all the hours worked, and resulted in Plaintiffs' effective rate of pay falling below the required minimum wage rate.

67. Defendants habitually required Plaintiffs to work additional hours beyond their regular shifts but did not provide them with any additional compensation.

68. From approximately June 2018 until on or about September 2019, Defendants willfully disregarded and purposefully evaded recordkeeping requirements of the FLSA and NYLL by failing to maintain accurate and complete timesheets and payroll records.

69. Defendants required Plaintiff Pastor to sign a document that reflected an inaccurate hourly pay months before he had received this rate.

70. Defendants paid Plaintiffs their wages in a combination of check and cash and by check.

71. Defendants failed to post at the workplace, or otherwise provide to employees, the required postings or notices to employees regarding the applicable wage and hour requirements of the FLSA and NYLL.

72. Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours Plaintiffs (and similarly situated individuals) worked, and to avoid paying Plaintiffs properly for his full hours worked.

73. Defendants engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

74. Defendants' unlawful conduct was intentional, willful, in bad faith, and caused significant damages to Plaintiffs and other similarly situated former workers.

75. Defendants failed to provide Plaintiff Pastor and other employees with accurate wage statements at the time of their payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer;

rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

76. Defendants failed to provide Plaintiffs and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

## FLSA COLLECTIVE ACTION CLAIMS

77. Plaintiffs brings his FLSA minimum wage, overtime compensation, and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons (the "FLSA Class members"), i.e., persons who are or were employed by Defendants or any of them, on or after the date that is three years before the filing of the complaint in this case (the "FLSA Class Period").

78. At all relevant times, Plaintiffs and other members of the FLSA Class were similarly situated in that they had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans including willfully failing and refusing to pay them the required minimum wage, overtime pay at a

one and one-half their regular rates for work in excess of forty (40) hours per workweek under the FLSA, and willfully failing to keep records under the FLSA.

79. The claims of Plaintiffs stated herein are similar to those of the other employees.

## FIRST CAUSE OF ACTION

### VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA

80. Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

81. At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d). Defendants had the power to hire and fire Plaintiffs (and the FLSA Class Members), controlled the terms and conditions of their employment, and determined the rate and method of any compensation in exchange for their employment.

82. At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

83. Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

84. Defendants failed to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

85. Defendants' failure to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

86. Plaintiffs (and the FLSA Class members) were damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

### VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA

87. Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

88. Defendants, in violation of 29 U.S.C. § 207(a)(1), failed to pay Plaintiffs (and the FLSA Class members) overtime compensation at a rate of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

89. Defendants' failure to pay Plaintiffs (and the FLSA Class members), overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

90. Plaintiffs (and the FLSA Class members) were damaged in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

### VIOLATION OF THE NEW YORK MINIMUM WAGE ACT

91. Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

92. At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651. Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of his employment, and determined the rates and methods of any compensation in exchange for his employment.

93. Defendants, in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor, paid Plaintiffs less than the minimum wage.

94. Defendants' failure to pay Plaintiffs the minimum wage was willful within the meaning of N.Y. Lab. Law § 663.

95. Plaintiffs were damaged in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION

## VIOLATION OF THE OVERTIME PROVISIONS

## OF THE NEW YORK STATE LABOR LAW

96. Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

97. Defendants, in violation of N.Y. Lab. Law § 190 *et seq*., and supporting regulations of the New York State Department of Labor, failed to pay Plaintiff's overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

98. Defendants' failure to pay Plaintiff's overtime compensation was willful within the meaning of N.Y. Lab. Law § 663.

99. Plaintiffs were damaged in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION

## VIOLATION OF THE NOTICE AND RECORDKEEPING

## REQUIREMENTS OF THE NEW YORK LABOR LAW

100. Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

101. Defendants failed to provide Plaintiffs with a written notice, in English and in Spanish (Plaintiffs' primary language), containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by NYLL §195(1).

102. Defendants are liable to Plaintiffs in the amount of $5,000, together with costs and attorneys' fees.

## SIXTH CAUSE OF ACTION

## VIOLATION OF THE WAGE STATEMENT PROVISIONS

## OF THE NEW YORK LABOR LAW

103. Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

104. With each payment of wages, Defendants failed to provide Plaintiffs with an accurate statement listing each of the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL 195(3).

105. Defendants are liable to Plaintiffs in the amount of $5,000, together with costs and attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully requests that this Court enter judgment against Defendants by:

(a) Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members apprising them of the pendency

of this action, and permitting them to promptly file consents to be Plaintiffs in the FLSA claims in this action;

(b) Declaring that Defendants violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(c) Declaring that Defendants violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(d) Declaring that Defendants violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs' and the FLSA Class members' compensation, hours, wages, and any deductions or credits taken against wages;

(e) Declaring that Defendants' violations of the provisions of the FLSA were willful as to Plaintiffs and the FLSA Class members;

(f) Awarding Plaintiffs and the FLSA Class members damages for the amount of unpaid minimum wage, overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(g) Awarding Plaintiffs and the FLSA Class members liquidated damages in an amount equal to 100% of his damages for the amount of unpaid minimum wage and overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(h) Declaring that Defendants violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(i) Declaring that Defendants violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(j) Declaring that Defendants violated the notice and recordkeeping requirements of

the NYLL with respect to Plaintiffs' compensation, hours, wages and any deductions or credits taken against wages;

(k)     Declaring that Defendants' violations of the provisions of the NYLL were willful as to Plaintiffs;

(l)     Awarding Plaintiffs damages for the amount of unpaid minimum wage and overtime compensation, and for any improper deductions or credits taken against wages as applicable

(m)     Awarding Plaintiffs damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(n)     Awarding Plaintiffs liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage and overtime compensation shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

(o)     Awarding Plaintiffs and the FLSA Class members pre-judgment and post-judgment interest as applicable;

(p)     Awarding Plaintiffs and the FLSA Class members the expenses incurred in this action, including costs and attorneys' fees;

(q)     Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

(r)     All such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs demands a trial by jury on all issues triable by a jury.

Dated: New York, New York

March 30, 2021

                                          MICHAEL FAILLACE & ASSOCIATES, P.C.

                           By:       /s/ Michael Faillace
                                          Michael Faillace [MF-8436]
                                          60 East 42nd Street, Suite 4510
                                          New York, New York 10165
                                          Telephone: (212) 317-1200
                                          Facsimile: (212) 317-1620
                                          *Attorneys for Plaintiff*